Your Honors, my name is Randall Forbes. I represent the Social Security Disability Claimant. I did not represent the claimant at the hearing level. I believe in this one, it was at the district court level when I first got into the case. This case revisits an issue that I've been arguing in several cases the last couple months, and one is what value or what attention should an administrative law judge give to a consistent and arduous work history. I can't cite any other cases other than what are in the brief because of rule. I will let you know that this court has ruled on it, but it's been so recent that we're not even past the rehearing period. As soon as we're past the rehearing period, I'll submit it as additional authority. You're talking about Hill? Yes. You brought it upside down. Well, you don't have to. No, it's a valid law. Okay. All right. Well, then. Just because it's in the petition for rehearing, it's still the law. And I just didn't have time to hammer that one out, so I didn't want to over set my case. So at least we have some case law now that deals with the issue. And it really boils down to this. A lot of these cases have to do with whether you believe a claimant on issues of pain or fatigue. And if someone has put in the lift of the heavy weights, that ought to mean something. And it certainly ought not to be ignored. And so in Loveless, and I'll sound like a broken record because I'll be arguing the same thing in the next case, but the thing is is that that's an important part of this case. The second most important part of this case is the, what I thought and what I've outlined as inadequate handling of the physician opinions. And I mean, it's quite detailed, but the main point is is that a subsequent physician opinion that sets forth limitations is not automatically or necessarily inconsistent with an earlier opinion that may not have had as extensive of limitations. And that's just merely because we're looking at a different set of facts. And in this case, the primary care physician towards or nearly a year after an orthopedic person issued limitations issued more restrictive limitations. And the basic reasoning is is that the condition worsened in relation to the shoulder, but the other point is that the primary care physician looked at many more parts of this person's health and body than the orthopedic physician did. So I just don't think that the administrative law judge adequately dealt with that issue, nor did he provide any logical reasoning to elevate an old or stale orthopedic opinion above the primary care opinion. And then the other point is maybe the orthopedic opinion was correct, but it's not correct forever. If there's a worsening of condition, then the primary care's opinion may be correct later, and then it's the administrative law judge's duty to select a different onset of disability date. You know, I don't have a lot more to say on that. The other issues, the overemphasis of daily activities kind of ties in with the other credibility arguments. And I guess I do have one more point. Well, what's his major problem? He has shoulder problems, hand problems, and a host of internal problems like diabetes and hepatic state, fatty fat, and some that I'm forgetting right now. But there are a host of other problems here besides just the shoulder. Well, this is a problem with Social Security cases. And by the time they get here, they usually got a lot of problems. Yeah. Well, these are all in the record. So, all right. Well, I'll reserve the rest of my time for rebuttal if you don't have any more questions. All right. Thank you, Mr. Ford. Thank you. Mr. Dilley? Your Honors, may it please the Court. Javid Dilley on behalf of the Commission. As expressed in our brief to the Court, it is the Commissioner's view that the ALJ reasonably evaluated the medical opinion evidence and reasonably evaluated the claimant's credibility. I'll start first since opposing counsel did with respect to the work history as addressed most recently by this Court in Hill and then subsequently in an unpublished decision in Schumacher. The problem is that opposing counsel wants the Court to adopt the view that a solid work history has to be elevated above all of the other factors identified in 96-7P when evaluating an individual's credibility. That when an ALJ sees a claimant who has a good work history, he must conclude that that claimant is credible. And that's problematic for a disability insurance benefit cases. You have to be insured for disability. And in order to be insured, you have to have a pretty good work history. And so we would put ourselves in a situation where, because it's a DIB case, you have to put a thumb on the scale for the person's credibility. Moreover, the claimant in this case performed pretty arduous work, pretty heavy work for the vast majority of at least the record that we have, right, the 15 years of recognizable time for past relevant work. And the work that he was ultimately found to be able to do was far, far more limiting, right. The light work is a limitation to lifting only 20 pounds. It's not the sort of work that he really did much of in the past, except for the brief period where he was a restaurant manager. And so his view of what he could do despite his impairments wouldn't necessarily be in line with what the agency's policy and the vocational expert testimony might dictate. And so I think the court should be leery of, because the agency has said that there are multiple factors to be taken into account when evaluating credibility, the court should be leery of directing ALJs that they must, in a situation where a claimant has a good work history, find that person to be credible. I think that that's something, and I think generally speaking in the cases that were cited in Hill, and I think possibly also in Hill, usually the situation is, it is problematic where the ALJ uses a claimant's good work history against him him or her, against her credibility, uses the claimant's can-do attitude against him or her. That might be problematic, but that's not what happened here. Here in this case, opposing counsel wants the court to say because there was a good work history, the ALJ must, you know, was required to believe the claimant. With respect to daily activities, we see this argument a lot, and if the ALJ were to say, this person performs a certain number of daily activities, therefore that person can do light work, that would of course be problematic. Daily activities can't be evidence of the ability to perform full-time work. But that's not what the ALJ did here. The ALJ here considered daily activities just in evaluating credibility, considered what the claimant said about what he could do, and then compared that to what the record supported that he did, including at the end of his physical therapy for the shoulder, the fact that he was telling the physical therapist that he could mow the lawn, that he could trim tree hedges, that he could hang blinds, which obviously would involve the use of the shoulder. So to the extent that he said that he was more limited than that, it was reasonable for the ALJ to consider that solely to evaluate credibility, not ultimately to conclude, which the ALJ didn't hear. The ALJ specifically said here that it wasn't dispositive on the issue of whether he could perform full-time work. It was just something that he was evaluating when considering the credibility of the claimant. Opposing counsel also cites Bjornsson in this court's concerns regarding the boilerplate language that the agency used to use. I think now the language has been modified, but the cases haven't sort of percolated up to this court. So this is, I think this case was decided in early 2013. That was probably just before the language was changed. And so it's still employing the boilerplate. The agency is well aware as the, about the court's concerns, about the logic, the fact that credibility should be viewed as logically antecedent to the RFC. And I think generally speaking, it's not really even sort of a working argument anymore because the court's recognized that so long as the remainder of the credibility finding is supported, the credibility, that it's essentially a harmless error to employ the boilerplate language. With respect to the medical source opinions, opposing counsel argues that the later opinion by Dr. Cusack was incorrectly discounted by the ALJ and that Dr. Cusack saw the claimant for sort of, it was his general interest, so didn't see him just for the surgical repair of the arm, of the shoulder, but for sort of general maladies. And that's of course true, but the argument that the, that Dr. Cusack's sort of relationship necessitates the crediting of that opinion, I think really is just not supported. The ALJ reasonably looked at the record and said that it didn't support the level of severity of Dr. Cusack's opinion. And when you look at the record, really they're only about maybe five pages of medical evidence after Dr. Torok's January 2012 opinion where he opined essentially that claiming to perform a limited range of light work, that I think there were maybe four doctor's visits during that time and all they really did was document the subjective complaints, as we argued in our brief, the subjective complaints that the claimant made to his doctor. There weren't really any documentation of medical tests and only in the very last of foot numbness. And he's only documenting complaints. These aren't documented by any medical testing. In the absence of more evidence to support these new limitations, and in the absence of anything on the opinion, in the medical opinion, to document those limitations, it was reasonable for the ALJ to go with the other two medical opinions of record. It's true that it came much later in the record, or at least a full year later in the record, but there's not a lot of medical evidence in that period, as I just argued, and there's not a lot to document the severity that Dr. Cusack opined. Dr. Cusack, for example, opined that the claimant could stand and walk for only 45 minutes in an eight-hour workday and could sit for only one and a half hours in an eight-hour workday. There's just nothing in the record to document that. Nothing even in Dr. Cusack's treatment notes to document that. And the opinion had a space where it asked of the doctor, please, you know, document what medical findings support this opinion, and it was left blank. And because, you know, should opposing counsel counter that in such a circumstance the ALJ was required to go back to the doctor to clarify the opinion, I think it was reasonable for the ALJ to look at the opinion and say, this is so out of joint with the record, this is so unsupported by the record, that I don't need to do that because I simply disbelieve this opinion. And once that's, once the ALJ did that reasonably, it was reasonable then for the ALJ to say, okay, well what else remains? There were two other medical, three technically, but two other medical source opinions of record. The state agency reviewer, who opined at the end of 2011, and Dr. Torok, who opined finally in January of 2012, that he was limited to a reduced range of light work, that he could lift at most 20 pounds and no more than 10 pounds overhead with his right arm, his twice surgically repaired arm. And that he had certain other limitations that the ALJ ultimately honored in the RFC, but that Dr. Cusack's opinion was, was just not supported, was not supported by the record. I guess to button it up at the end, opposing counsel makes a final argument about the impairments in combination. And I think, I would caution, I would ask the court not to think, to view that as the ALJ having to sit in contemplation of the totality of the record and surmise whether additional limitations are required. This is generally not what ALJs do. ALJs, if they did that, for example, against the claimant, would be, I think, castigated as playing doctor, right? And to ask the ALJ to do that in favor of the claimant is to ask the ALJ to play doctor on behalf of the claimant. May I briefly conclude? Your Honor? May I briefly conclude? Yes. So I think that really what the ALJs do to consider, first of all, the ALJ said that the, at step two, that he was not severe, but really what the ALJs do is evaluate the medical opinions of record and what limitations the credible medical opinions of record opine, and that's what the ALJ did here. If the court has no further questions, I'll just stand on a brief. Thank you. Thank you, Your Honor. In relation to the work history issue, I'm not maintaining that it's conclusive or that it should be elevated above all other factors. What I am maintaining and arguing is that it is one of many factors, but it needs to be identified and weighed, and until it's identified and weighed, you don't know how it balances out with all the other factors. The statement that if someone qualifies for disability insurance benefits, that means they got a good work history. Well, there are work histories, and then there are work histories. To qualify for disability insurance benefits, you need 20 credits in 10 years, which equates roughly to five years of work out of 10 years. Mr. Loveless's work history is multiple times better than that minimal comment. Finally, primary care physicians do a lot more than just scribble notes on papers that sometimes are hard to read. They conduct examinations. If someone says, I got finger pain, they usually are looking at the fingers, grabbing the fingers, palpating them, seeing if certain movements evoke pain, and in this case, with a shoulder that was getting worse, well, primary care physicians also know how to manipulate shoulders to evoke pain, and so to say that the primary care physician's notes are inconsistent with the record is not consistent with the record at all. So, Mr. Loveless was one of the primary physician was rendering his opinion. He really was the only one examining the claimant during that time period. That's all I have, Your Honor. Thank you very much. Thank you, Mr. Forbes. Thanks to both counsel. Case is taken under advisement.